**SIGNED this 15th day of August, 2007.**

_____
LEIF M. CLARK
UNITED STATES BANKRUPTCY JUDGE
_____

# United States Bankruptcy Court

**Western District of Texas**
**San Antonio Division**

| | |
|---|---|
| IN RE | BANKR. CASE NO. |
| C. LYNCH BUILDERS, INC. | 06-51571-C |
| *DEBTOR* | CHAPTER 7 |
| JOHN PATRICK LOWE, TRUSTEE | |
| *PLAINTIFF* | |
| V. | ADV. NO. 07-5018-C |
| CITIBANK (SOUTH DAKOTA), N.A. | |
| *DEFENDANT* | |

### DECISION ON DEFENDANT'S MOTION TO REOPEN ADVERSARY PROCEEDING AND FOR RELIEF FROM DEFAULT JUDGMENT

CAME ON for consideration the foregoing matter. Defendant seeks to set aside a default judgment in the amount of $37,258.16, plus interest at the federal judgment rate from the date of the filing of the complaint. Plaintiff opposes. This decision resolves the dispute.

## BACKGROUND FACTS

C. Lynch Builders, Inc. filed a chapter 7 petition on August 16, 2006.  Without objection, John Patrick Lowe was appointed as the trustee.  The trustee initiated a number of avoidance actions against various parties, as part of the course of his administration of the estate, of which this action was one.  This complaint, seeking to avoid certain transfers to the defendant pursuant to section 548 of the Code, was filed February 6, 2007.  The trustee accomplished service on the defendant pursuant to Rule 7004 of the Federal Rules of Bankruptcy Procedure on February 8, 2007, both by regular first class mail and by certified mail.  The green card confirming receipt was signed on February 12, 2007.  The original answer due date was March 8, 2007.

Both parties acknowledge that Citibank, through its in-house counsel, sought and obtained an extension of thirty days in which to file an answer in the case.  The trustee also sent, at Citibank's request, copies of the cancelled checks which the trustee maintained formed the basis of his lawsuit.

On April 12, 2007, after the thirty day extension had run, and after Citibank had failed to file an answer, the trustee filed a request for clerk's entry of default.  He also filed a motion for default judgment against Citibank.  This motion was served both on Citibank at the original service address in the Complaint, and on Citibank's general counsel at an address in Hoffman Estates, Illinois.  Service was accomplished via certified mail.  The clerk of court, via the BNC noticing system used nationwide by the bankruptcy courts, notified Citibank of the entry of default.  No response was filed to the motion for default judgment.  On April 26, 2007, the court entered a default judgment in favor of the trustee and against Citibank.[1]

---

[1] The local rules for bankruptcy courts for the Western District of Texas provide that the time to respond to all motions in adversary proceedings (save for motions to dismiss under Rule 12 and motions for summary judgment under Rule 56) is ten days.  *See* BANKR. L.R. 7016(b) (Western District of Texas, adopted Nov. 7, 2005).

On June 25, 2007, some two months after the entry of the default judgment, Citibank filed this motion to reopen and to set aside the default judgment, claiming good cause and further asking for relief under Rule 60(b)(1) on grounds of mistake, inadvertence, and/or excusable neglect. To the motion is attached the affidavit of the associate general counsel of Citicorp Credit Services, Inc. (USA), the servicing entity for the defendant. The allegations in the motion track the affidavit, so the court's attention will be focused on the affidavit, which is a statement under oath of an agent of the defendant.

The affiant first explains that Citibank (it is not clear whether she is referring to the defendant or the servicing entity for whom she works) "is downsizing a substantial number of its operations [as part of a "massive restructuring of its corporate obligations"], including its legal department." She adds that personnel who were working on this adversary proceeding were being moved into other departments, leading to "confusion regarding who was responsible for continuing to assist with the investigation." She also admits that, as litigation files were moved from Hoffman Estates to Elk Grove Village (both suburbs of Chicago), "the file was misplaced in the move." Thus, the first ground for "mistake, inadvertence or excusable neglect" arises from the legal department's inability to keep track of its litigation files during an internal office restructuring. The affidavit does not explain the affiant's personal role in these failings, if any.

Citibank's second ground is disturbing, not for what it says but for its innuendo. According to the affidavit, "The Trustee alleged in the Complaint *and indicated to Citibank's legal department* that the credit card account was a personal account in the name of Clyde Lynch or Nancy Lynch ..." Movant Affidavit, ¶ 6. Next, she says that "the Trustee did not provide the credit card account number, and the documents that the Trustee provided to Citibank contained illegible

-3-

numbers." Movant Affidavit ¶ 7. After explaining that Citibank located "during the course of the internal investigation" a Sears account in the name of the debtor corporation, "Citibank *communicated* this information to the Trustee." Movant Affidavit ¶ 8. Then, the affiant says that "Citibank also *requested* additional information *from* the Trustee and *understood* that the Trustee would provide such information ..." Movant Affidavit ¶ 9. The affiant then claims that "due to the ongoing investigation and lack of information in the Complaint, I *believed* that the Trustee was willing to continue to extend the answer deadline ...." Movant Affidavit ¶ 10. She goes on to state that, when the trustee filed the motion for default judgment, "Citibank *continued to believe* that the Trustee would not pursue entry of a default judgment ...." Movant Affidavit ¶ 11. She concludes that "due to these difficulties and misunderstandings, Citibank inadvertently failed to answer the Trustee's Complaint." Movant Affidavit ¶ 12.

The innuendo in this affidavit testimony is that the trustee misled the defendant into believing that he would not actually pursue the relief that he ultimately obtained – a default judgment. The implication is that default judgment was obtained through fraud on the part of the trustee. But the defendant does not actually *say* the trustee defrauded or misled Citibank. In fact, the affidavit itself states that Citibank's failure to answer was "*wholly* the result of mistake, inadvertence, and/or excusable neglect." Thus, Citibank's motion and affidavit cast a cloud without actually making a claim that would have to be backed up with evidence in order to withstand Rule 9011 scrutiny.

The affidavit is careful in its choice of phraseology, and equally careful in its omission of important facts. Paragraph 6 alludes to an "indication" on the part of the Trustee, but does not in any way identify how such an indication might have been conveyed. The affidavit does not identify

a phone conversation, or an electronic mail communication, or letter to the affiant, who was associate in-house counsel. It does not disclose whether this indication was given to someone other than the affiant at Citibank. The affidavit is silent on these all-important details.

In Paragraph 8, the affiant says that Citibank "communicated information" to the Trustee about the Sears credit card account. But she does not say who made this communication, or when, or in what manner. The affidavit is again silent on the details.

In Paragraph 9, the affiant says that Citibank also "requested additional information from the Trustee," then adds that Citibank "understood that the Trustee would provide such information ..." But the affidavit does not say whether the request was by letter, or email, or by telephone, nor does it identify who at Citibank made the request, or when. More tellingly, the affidavit does not say on what basis Citibank "understood" that the trustee would provide "such information." No trustee communication is identified in the affidavit, and no copy of such a communication is attached as an exhibit (though if one existed, one would have expected it to have been attached). The affidavit stops short of stating what led someone at Citibank to have its understanding, instead inviting the court to assume a fact not alleged, *i.e.*, that the trustee made some sort of communication that induced Citibank's "understanding."

This litany of missing information culminates with the affiant's statement that she believed the trustee was willing to continue to extend the answer deadline. She provides no basis for her belief, other than the litany of unsubstantiated assumptions and inferences in the previous four paragraphs. The lack of important details and corroboration that might otherwise have formed some sort of basis for her inaction is telling. Though she certainly intimates that it was the trustee's fault that she dropped the ball, she does not directly accuse the trustee of saying or implying anything to

her or anyone else at Citibank, nor does she offer any competent evidence that the trustee *ever* either said or implied that Citibank did not have to file a timely answer.  What is more, the affidavit fails to explain an internal contradiction.  How is it that Citibank, or its associate general counsel, could have been relying on receiving information regarding the transfers if Citibank's legal department had *lost the file*, as the affiant details in the first part of her affidavit?

And if there had been any doubt about the trustee's intentions, they certainly should have been resolved when the trustee filed – and served on the affiant, in her capacity as associate general counsel – a motion for default judgment.  Incredibly, the affiant says that *Citibank* "continued to believe that the trustee would not pursue entry of a default judgment."  Yet she offers no evidence whatsoever for this assumption, other than her own assumptions.  Had she called the trustee and obtained an extension, then her affidavit testimony would certainly have referenced the telephone conversation, but that evidence is not in the affidavit.  Had she obtained an extension via an electronic mail message, then surely a copy would have been attached to this affidavit.  There is no such copy.  Ultimately, the court granted the motion for default judgment, there having been no response by anyone from Citibank.  Pursuant to standard procedures in use in this and most other districts, the Bankruptcy Noticing Center sent a copy of the default judgment to those persons named in the motion for default judgment – which included the affiant.  The affiant does not deny that she received the judgment, nor does she explain why she failed to promptly move to set aside the default judgment.  Ultimately, no action was taken until this motion was filed nearly *two months* later – by outside counsel.

The actual evidence presented in the affidavit then, apart from the innuendos and shadings, is simple – Citibank's associate general counsel dropped the ball.  In fact, she dropped the ball twice.

First she missed the answer date.  Second, she failed to respond to the motion for default judgment.[2]

Her excuse for being neglectful is that she made certain assumptions.  Her affidavit fails to set out

her basis for those assumptions – she cannot identify with any kind of precision any communication

on the part of the trustee that might have led her to make such assumptions (and the court is

disinclined to imagine such communications on the thin and frankly disingenuous suggestions

contained in this affidavit).  These, then, are the facts said to support Citibank's contention that its

failure to answer was "wholly the result of mistake, inadvertence, and/or excusable neglect."

The trustee responds to Citibank succinctly.  He acknowledges speaking with in-house

counsel one time, and agreeing to an extension of 30 days for Citibank to answer.  He says he sent

copies of cancelled checks to in-house counsel as well.  According to the trustee, "Citibank never

did anything else.  It never asked the Trustee for more information.  It never asked the Trustee for

another extension of time in which to file an answer.  It never asked the Court for another extension

of time in which to answer.  It did not file an answer.  It did not ask the Trustee for a better copy of

the cancelled checks the Trustee sent its counsel."  The trustee then invites the court to take judicial

notice that Citibank has managed to file answers, motions, and responses to motions in an array of

other cases and proceedings in this court in the last few months.

## ANALYSIS

A motion to set aside a default judgment under Rule 55(c) is committed to the sound

discretion of the trial court.  *Federal Sav. & Loan Ins. Co. v. Kroenke*, 858 F.2d 1067, 1069 (5th Cir.

---

[2] Actually, she dropped the ball three times, because she also failed to promptly move to set aside the default.  Had she filed within ten days of its entry, her motion would have been deemed filed under Rule 59, rather than Rule 60(b).  The former rule has a much more relaxed standard for relief from judgment.  *See In re Aguilar*, 861 F.2d 873, 875 (5th Cir. 1988).  It took Citibank *two months* to finally get around to dealing with the default judgment by filing the instant motion – which, it should be noted, was filed by outside counsel.

1988).  The Fifth Circuit, like most circuits, generally favors dispositions on the merits, rather than

by default.  The discretion afforded trial courts in denying motions to set aside default judgments

is thus not unlimited.  *Dierschke v. O'Cheskey*, 975 F.2d 181, 183 (5th Cir. 1992); *see also United*

*States v. One Parcel of Real Property*, 763 F.2d 181 (5th Cir. 1985).  In the journey to determine

whether good cause exists to set aside a default judgment, courts must look to equitable principles.

*Dierschke*, *supra*, at 184.  In *One Parcel of Real Estate*, *supra*, at 183, for example, the court

focused on whether the public interest was implicated, whether there was a significant financial loss

to the defendant, and whether the defendant acted expeditiously to correct the default.  In another

decision rendered a month later, the circuit identified different factors: whether the default was

wilful, whether setting it aside would prejudice the defendant, and whether a meritorious defense

has been presented by the party seeking to set aside the default.  *CJC Holdings, Inc. v. Wright &*

*Lato, Inc.*, 979 F.2d 60, 64 (5th Cir. 1992).  In *CJC Holdings*, the court softened its use of the term

'wilful,' noting that neglect or culpable conduct on the part of the defendant more correctly states

the standard.  There, the circuit upheld the district court's denial of a Rule 55(c) motion, where the

defendant had received a copy of the complaint but not the summons, and suggested that it had been

misled into believing it would be served with process (and so was not looking for it when it did

arrive).  Process was mailed, but was misrouted internally to the accounting department.  The

defendants' president and the entire company then went on a vacation.  Afterwards, the president

attended a series of trade shows.  The court noted that counsel for the plaintiff sent a copy of the

complaint to the defendant's counsel as a courtesy, but that plaintiff's counsel was under no

affirmative duty to do so under the federal rules.  In sum, the circuit concluded that the trial court's

refusal to set aside default was not, on these facts, an abuse of discretion.  *CJC Holdings,* 979 F.2d,

-8-

at 64.[3]

The motion to set aside default judgment here focuses on excusable neglect on the part of Citibank's in-house counsel and on what Citibank says is a meritorious defense. The motion does not mention prejudice to the plaintiff if the motion is granted. It also does not explain the delay in acting to set aside the default judgment.

The "excusable neglect" standard implies that there are instances of neglect that are, in fact, inexcusable. In all such circumstances, there is neglect. Thus merely pleading neglect is not enough to warrant relief under Rule 60(b)(1). What must be presented in the motion are the circumstances that render the neglect in question excusable, notwithstanding that it was neglectful. *See In re Colley*, 814 F.3d 1008, 1010 (5th Cir. 1987) (grounds for relief under Rule 60(b) must be stated in the motion to entitle party to relief). Although the Supreme Court might be thought to have paved an easy highway for negligent lawyers in *Pioneer Investment* more than a decade ago, subsequent case law (much of it at the circuit level) has clarified that the Supreme Court's decision should not be read as a federal license to commit malpractice, or to violate the ethical duties a lawyer is obligated to perform under local bar rules. *See Pioneer Investment Services Co. v. Brunswick Assoc. L.P.*, 113 S.Ct. 1489, 1498 (1993) (the determination of what sorts of neglect is "excusable" is, "at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission"); *In re Pettle*, 410 F.3d 189, 192 (5th Cir. 2005) ("While Pioneer guides an analysis of

---

[3] One should note that cases in which the circuit speaks with greater generosity in favor of setting aside default judgments are often those in which the trial court has *granted* the motion to set aside, and a party is challenging the grant on appeal as an abuse of discretion. The court, in affirming the grant, tends to employ language more favorable to the result being reached in the decision. *See, e.g., Lindsey v. Privey Corp.*, 161 F.3d 886, 893 (5th Cir. 1998). Here, this court has attempted to focus on cases in which a party is attacking the trial court's *denial* of a motion to set aside default, as those cases more accurately focus on whether an abuse of discretion has occurred. Stated another way, a court is less likely to be guilty of an abuse of discretion in granting a motion to set aside than it could be were it to deny such a motion. In the latter context, the legal and factual issues are more sharply focused.

"excusable neglect" within the context of Bankruptcy Rule 9006(b)(1), nothing in the Supreme Court's opinion changes the well-established rule that "'inadvertent mistake'[,] ... [g]ross carelessness, ignorance of the rules, or ignorance of the law are insufficient bases for 60(b)(1) relief.... In fact, a court would abuse its discretion if it were to reopen a case under Rule 60(b)(1) when the reason asserted as justifying relief is one attributable solely to counsel's carelessness with or misapprehension of the law or the applicable rules of court."), *citing Edward H. Bohlin Co. v. Banning*, 6 F.3d 350, 356-57 (5th Cir. 1993); *see also In re Kmart Corp.*, 381 F.3d 709, 713 (7th Cir. 2004) (proof of claim filed one day late not allowed on excusable neglect grounds where attorney waited until the last minute to file the claim, and left the filing to a clerk, adding that fault in the delay is the preeminent factor in *Pioneer*); *United States v. Torres*, 372 F.3d 1159, 1163 (10th Cir. 2004) (fault in the delay remains the most important single factor in determining whether neglect is excusable); *Graphic Communications Int'l Union v. Quebecor Printing Providence, Inc.*, 270 F.3d 1, 5 (1st Cir. 2001) (the excuse given for the late filing must have the greatest import); *Lowry v. McDonnell Douglas Corp.*, 211 F.3d 457, 463 (8th Cir. 2000) (at the end of the day, the focus must be upon the nature of the neglect, and "garden variety attorney inattention" is not excusable neglect).[4]

---

[4] The *Lowry* court considered an attorney's claim that he could not correctly count the number of days for calculating the deadline for a notice of appeal. The court said, "

> If Lowry is suggesting that June being a thirty day month, rather than a thirty-one day month, threw off his calculations, that argument is specious. If June had thirty-one days instead of thirty, the notice of appeal would have been due one day sooner. ... experienced counsel's misapplication of clear and unambiguous procedural rules cannot excuse his failure to timely file a notice of appeal. Here ... the excuses [are] so thin as to leave the lapse not only unexcused but inexplicable. ... If we were to apply the excusable neglect standard to require that we deem Lowry's neglect excusable in this case, it is hard to fathom the kind of neglect that we would not deem excusable.

*Id.*, 211 F.3d at 464 (internal quotations and citations omitted); *see also Advanced Estimating Systems, Inc. v. Riney*, 130 F.3d 996, 998 (11th Cir. 1997) (a lawyer's misunderstanding of clear law cannot constitute excusable neglect, else every appellant's lawyer would plead his own inability to understand when he misses a deadline, a result not intended by the Supreme Court in *Pioneer*).

The burden is on the moving party on a motion for relief under Rule 60(b)(1) to set forth the facts that would justify relief. *See Colley*, *supra*; *Kmart Corp.*, *supra*. Here, the essential facts point only to lawyer error and inattention.[5] Citibank's associate general counsel talked to the trustee and got a 30 day extension to file an answer, confirming that in-house counsel was both aware of the suit and aware of the duty to respond timely.[6] The extended deadline came and went, but Citibank's in-house counsel did not file an answer, or ask for a further extension of time. Citibank's in-house counsel was served with a copy of the trustee's motion for default judgment, but did not respond to that motion. After judgment was entered pursuant to that motion, the clerk of court sent a copy of the judgment to Citibank, which failed to move within 10 days to set it aside under Rule 59(a). The only explanation for all of these failings offered by Citibank are the in-house reorganization of its legal department (an excuse not normally deemed sufficient to justify a finding of excusable neglect)[7] and Citibank's own internal beliefs and understandings that the trustee would not actually seek a judgment for its failure to answer. Citibank offers no cognizable facts to explain *why* it had these beliefs and understandings. Instead, it offers only innuendo. The motion, as noted, stops short of identifying any specific communication on the part of the trustee that would have led to Citibank's "belief" and "understanding." For excusable neglect to be found, Citibank needed to plead that in fact there *were* such communications (and so be ready to back up that allegation with

---

[5] Citibank also argues (albeit obliquely) that its own internal restructuring might have led to its legal department's losing track of the file, intimating that perhaps that might qualify as excusable neglect, The argument would essentially come down to this: "we made an internal decision to restructure our legal department; please don't force us to absorb the costs or consequences of that internal decision." That argument, however, has already been rejected by the Supreme Court. *Pioneer Inv. Services Co. v. Brunswick Associates, L.P.*, 507 U.S. 380, 398, 113 S.Ct. 1489, 1499 (1993) ("in assessing the culpability of respondents' counsel, we give little weight to the fact that counsel was experiencing upheaval in his law practice at the time of the bar date").

[6] And, one would hope, presumably aware of the consequences of not answering a complaint under the Federal Rules of Civil Procedure, including the possibility of a default judgment.

[7] *See* note 5, *supra*.

evidence).  If Citibank is unwilling to plead such facts, however, the court is under no duty to imagine them from furtive intimations.[8]  No other factual basis is alleged for Citibank's internal assumptions, and no other facts are alleged that would explain away Citibank's delay in responding not only to the complaint but also to the motion for default judgment.  Citibank's only excuse is that its in-house counsel dropped the ball.  That is insufficient to support a finding of excusable neglect.

Pioneer Investment says that a court considering the issue of excusable neglect should also examine such matters as delay, prejudice and good faith.  Both Pioneer and subsequent circuit authority state that the reasons for the delay are of paramount importance.  The court has already detailed the thin rationale offered by Citibank for its delay, and concluded that those excuses come up short.  But there is also the question of the impact of Citibank's delay on the resolution of this case.  This is a chapter 7 estate with precious little in the way of assets.  What assets there may be for distribution are likely, at this stage, to be limited to recoveries from avoidance actions such as these.  The creditors of the estate, if they are to have a recovery at all, must await the entry of a trustee's final report and accounting.  That, in turn, cannot be completed until pending litigation is resolved.  Forcing a delay in the resolution of this litigation, especially a delay occasioned by the carelessness of the very defendant now seeking relief from their inattention, strikes this court as inequitably transferring the cost of the delay onto the estate.  As the question of setting aside default judgments is at bottom an equitable one, the equities in this case do not favor the defendant.  See Dierschke v. O'Cheskey, 975 F.2d 181, 183 (5th Cir. 1992) (motions to set aside defaults turn on equitable principles); see also Federal Sav. & Loan Ins. Co. v. Kroenke, 858 F.2d 1067, 1069 (5th

---

[8] The motion for relief from judgment also delicately stops well short of pleading fraud as a ground for relief from judgment, which would have obligated Citibank to plead (and be willing to prove) specific facts establishing how the trustee defrauded Citibank.  A fair inference can be made that this ground was not pleaded because there are no such facts.

Cir. 1988) (decision committed to sound discretion of the trial court).

Similarly, prejudice will result if this judgment is re-opened on grounds of excusable neglect, as the trustee was forced to pursue this litigation at his own cost, without assurance of payment for his own attorneys' fees.  After following the rules and obtaining a default judgment, the trustee should not now be penalized, forced to incur additional costs and expenses to litigate with a party who simply failed to pay the proper attention to this matter in the first instance.[9]

The court cannot divine from the motion whether Citibank was acting in good faith or not. Certainly, Citibank suggests that it just wanted to settle this case once it got to the bottom of the matter, but Citibank's failure to respond to the motion for entry of default judgment betrays a level of inattention that could suggest that the matter was not sufficiently large in terms of dollar liability for the company to devote any particular time to resolving it.  Rather than speculate, however, the court chooses to presume good faith (or at least a lack of malice) on the part of Citibank.

Recalling that consideration of excusable neglect is a wholistic endeavor, though one in which the cause for delay is paramount, the court concludes that excusable neglect is not apparent on the face of this motion – it does not state a *prima facie* case for granting reconsideration under Rule 60(b)(1).

Citibank notes that it has a meritorious defense.  That alone is insufficient to support setting aside a default judgment, however.  *See   CJC Holdings, Inc. v. Wright & Lato, Inc.*, 979 F.2d 60,

---

[9] Had an answer been filed, for example, the deadline would then have begun to run for both parties to file formal disclosures under Rule 26(a).  At that point, both parties would have had the procedural right to insist on the documentation necessary to resolve the matter.  Had that course been pursued, this matter might already have been resolved months ago with an agreed judgment.  Instead, Citibank intimates in this motion that it had a right to expect disclosures and discoveries *before* an answer even needed to be filed in this case.  Nothing in the Federal Rules of Civil Procedure even remotely supports such a supposition.  Nor do the rules support Citibank's apparent belief that a trustee should not pursue the remedy of default judgment, even though it is provided for by the federal rules, and even though it is the most sensible course for a cash-strapped trustee to pursue, especially if he or she is attending to his duty to minimize administrative expenses to the estate. Such a rule would only reward inattention at the expense of estate administration costs.

-13-

64 (5th Cir. 1992) (meritorious is one, but not the only, consideration in deciding whether to set aside a default judgment). In all events, the thrust of the meritorious defense appears to be to the effect that, although the transfers in question might have come from the debtor to pay obligations of the individuals who owned the debtor corporation, the payments were in fact for obligations of the company because the individuals used their own credit to help keep their company business running. The motion offers neither statute nor case law to support the contention that this constitutes a defense to the trustee's avoidance action under section 548(a)(1)(B). As this court can best tell from what has been pleaded, Citibank's intended defense is that the *debtor* received reasonably equivalent value because the goods and services represented by the charges benefitted the debtor.

But the fact that the debtor company may have benefitted from the goods and services that were purchased misses the mark. It was the debtor's *principals* who advanced that value to the debtor, not Citibank, by using their personal credit to buy materials for the debtor company. The fraudulent transfer is alleged to have occurred when the debtor company *repaid* the principals' debt to Citibank. The debt repaid was not a company debt. Nor was the company obligated to repay the principals' debt, unless there existed a debtor-creditor relationship between the principals and the debtor company. That relationship, in the case of closely held businesses, is not presumed. To the contrary, the presumption is that, when principals make advances on behalf of their closely held business, the advance is in the nature of an *equity infusion*, not an indebtedness. *See generally Pepper v. Litton*, 308 U.S. 295, 306 (1939) (even documented indebtedness to a corporate insider may be considered equity, because of the opportunity for self-dealing in derogation of the insider's fiduciary duty to the corporation); *see also Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting*, 908 F.2d 1351, 1356 (7th Cir. 1990).

-14-

When the debtor company paid off the principals' resulting personal unsecured obligations, no further value was received by the debtor company. The principals made advances to their wholly owned company, as often happens in closely held enterprise, and those advances would normally be treated as an infusion of equity, but the company was not legally obligated to reimburse the principals for those advances unless there was some evidence of such an obligation – a promissory note, for example. Citibank offers no suggestion that such an obligation in fact existed. Instead, it presumes such an obligation. That presumption, especially in the case of corporate insider advances, is seriously flawed. *See Pepper v. Litton*, *supra*. Citibank also does not suggest that there was some sort of *quid pro quo* understanding in place before the principals used their own credit to help out their company. The debtor's bankruptcy schedules do not reflect a claim by the principals against the debtor, nor does the statement of financial affairs reflect any payments to insiders within the one year preceding filing. Thus, regardless of what benefit the company enjoyed from principals' use of their personal credit to buy goods and services for the company, that was a benefit that redounded from an equity infusion on the part of the principals. The company was under no obligation to "repay" that equity infusion. To the contrary, it would have been wholly improper for the company to have done so, so long as other creditor claims against the company remained outstanding. *See Pepper v. Litton*, *supra*; *see also* 11 U.S.C. §§ 547(b); 548(a)(2); 510(c). Citibank well deserved to be repaid – but not by the company. Citibank's debtors were the individuals who were principals of the company.

Certainly, the *principals* wanted the debt to Citibank repaid because (accepting for the moment Citibank's characterization of the facts) they were personally liable to Citibank. When they chose to arrange for that repayment out of the company's assets, they relieved themselves of a

-15-

personal liability using corporate assets, and the company was forced to repay its principal's indebtedness, even though the advances in question were, from the company's point of view, infusions of equity.  From the company's point of view, it received no reasonable equivalent value *on account of the transfer to Citibank*, because it had no obligation to repay Citibank in the first place, and similarly no obligation to repay its principals for their equity infusion.

Citibank's "meritorious defense" is thus deeply flawed, and does not support its grant for relief from judgment.

### CONCLUSION

For the reasons stated, the court concludes that the motion for relief from judgment is not well-taken and should be denied.  An order consistent with this decision will be entered.

# # #